IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


LINDA A. SCOTT,

    **Plaintiff,**

vs.                                        CASE NO. 4:05CV13-MMP/AK

JO ANNE B. BARNHART,
**Commissioner of Social Security**

    **Defendant.**

_____/


### REPORT AND RECOMMENDATION

This action is brought pursuant to 42 U.S.C. § 405(g) of the Social Security Act (Act) for review of a final determination of the Commissioner of Social Security (Commissioner) denying Plaintiff's applications for disability insurance benefits (DIB) under Title II of the Act and supplemental security income benefits (SSI) filed under Title XVI of the Act.

Upon review of the record, the Court concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence; thus, the decision of the Commissioner should be affirmed.

**A.**    **PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI on December 29, 1999, alleging a disability onset date of December 1998 because of nutritional problems, anemia, fatigue, and flashbacks with panic. Plaintiff petitioned for a hearing before an

administrative law judge (ALJ), who conducted a hearing on February 12, 2003, and entered an unfavorable decision on May 30, 2003. The Appeals Council denied Plaintiff's request for review, thus making the decision of the ALJ the final decision of the Commissioner. This action followed.

**B.     FINDINGS OF THE ALJ**

The ALJ found that Plaintiff had an affective disorder and a history of alcohol and drug abuse, which were severe impairments within the meaning of regulations, and that Plaintiff met the A criteria for Listing 12.04 because she suffered from depressive symptoms characterized by a sleep disturbance, decreased energy, and thoughts of suicide, but that she did not satisfy the B or C criteria of the listing. (R. 27).

To meet the B criteria, Plaintiff must exhibit two of the following: marked restrictions of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence or pace; and repeated episodes of decompensation, each of extended duration. (R. 27).

To meet the C criteria, Plaintiff must show "a medically documented history of an affective disorder of at least two (2) years duration that has caused more than a minimal limitation of ability to do work related activities, with symptoms or signs currently attenuated by medication or psychosocial support (absent) and one (1) of the following: 1. Repeated episodes of decompensation, each of extended duration (absent), or 1. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the claimant to decompensate (absent), or 3. A current history of one (1) or

**No. 1:02CV125-SPM/AK**

more years inability to function outside a highly supportive living arrangement with an indication of continued need for such arrangement (absent)." (R. 27).

The ALJ noted that Plaintiff had a long, significant history of alcohol related hospitalizations, that she had reported non-compliance with her medications that resulted in hallucinations, that she was not truthful about her cocaine abuse in that she reported in one instance that she had not used cocaine in 15 years and in another she reported a recent relapse and a 30 year history of cocaine abuse. (R. 28-29). He then found that "based upon the claimant's compliance with medication and when she is abstaining from alcohol and drugs, she retains the residual functional capacity to perform light work with no more than moderate stress, accommodating for occasional lapses of concentration and occasional lapses of short term memory." (R. 29). The vocational expert testified that Plaintiff could perform her past relevant work as a fast food manager, a restaurant manager, a counter waitress, an informal waitress, a retail store manager, or an administrative/clerical worker. (R. 29).

## C.   ISSUES PRESENTED

Plaintiff argues that the ALJ erred in not finding that she met the requirements of Listing 12.04 and in rejecting her credibility. Specifically, Plaintiff asserts that the ALJ failed to articulate any specific reasons for not finding her credible, and the ALJ erred in not finding that Plaintiff had repeated episodes of decompensation (one of the B and C criteria of Listing 12.04) when the evidence shows that she spent 362 days out of 875 days receiving hospital psychiatric treatment.

**No. 1:02CV125-SPM/AK**

The government responds that the Plaintiff overlooked the ALJ's primary finding, which was that her substance abuse contributed to her disability. Further, the government contends that the ALJ discussed in depth that she was not forthcoming about her substance abuse, that she failed to comply with her medication regimen, and that she continued to work part-time during the relevant time period in spite of her claims that she had difficulty working mentally and dealing with others. Also, the many hospitalizations that Plaintiff refers to in her brief were all alcohol and drug related. Thus, the government argues, even if she were found to be disabled under §12.04C, she would not meet the listing if the affects of substance abuse and alcohol were eliminated from consideration. Finding that Plaintiff would not be disabled in the absence of drug and alcohol abuse, the ALJ could rely on the testimony of a vocational expert who found her capable of performing her past relevant work.

In reply, Plaintiff argues that she was hospitalized at Gateway Dual Diagnosis Center for substance abuse **and** mental illness, and therefore, her depression is the primary factor in her disability. Thus, Plaintiff argues, "Plaintiff's alcohol or other substance use is not material to her disability." Plaintiff also argues that the record shows that she could not afford her medication, which is why she took drugs and alcohol in an effort to medicate her depression.

The issue thus presented is whether the Commissioner's decision that Claimant is not disabled is supported by substantial evidence in the record and decided by proper legal standards.

**No. 1:02CV125-SPM/AK**

**D.     STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) sets forth the standard of review for this court.  The Commissioner's decision must be affirmed if it is supported by substantial evidence and the correct legal standards have been applied.  Graham v. Apfel, 129 F.3d 1420, 1422 (11th Cir. 1997).  Findings of fact by the Commissioner which are supported by substantial evidence are conclusive. 42 U.S.C. § 405(g). Miles v. Chater, 84 F.3d 1397, 1400 (11th Cir. 1996).  "Substantial evidence" has been defined to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citation omitted) (per curiam).  It is more than a scintilla, but less than a preponderance.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted).  The court may not reweigh the evidence or substitute its judgment for that of the Commissioner.  Wolfe v. Chater, 86 F.3d 1072, 1076 (11th Cir. 1996).  It must determine only if substantial evidence supports the findings of the Commissioner.  See Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987) (per curiam).  Even if substantial evidence exists which is contrary to the Commissioner's findings, where there is substantially supportive evidence of the Commissioner's findings, the court cannot overturn them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Unlike the deferential review accorded to the Commissioner's findings of fact, his conclusions of law are not presumed valid. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (citations omitted).  The Commissioner's failure to apply correct legal standards or to provide the reviewing court with an

**No. 1:02CV125-SPM/AK**

adequate basis for it to determine whether proper legal principles have been observed requires reversal. Id. (citations omitted).

A disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). To qualify as a disability the physical or mental impairment must be so severe that claimant is not only unable to do his previous work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(f), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity?

2. Does the individual have any severe impairment?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4. Does the individual have any impairments which prevent past relevant work?

5. Do the individual's impairments prevent any other work?

A finding of disability or no disability at any step renders further evaluation unnecessary. Plaintiff bears the burden of establishing a severe impairment that keeps him from performing his past work. If Plaintiff establishes that his impairment keeps him

**No. 1:02CV125-SPM/AK**

from his past work, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given Plaintiff's impairments, Plaintiff can perform.  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986); MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, Plaintiff must prove that he cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).  It is within the district court's discretion to affirm, modify, or reverse a Commissioner's final decision with or without remand. 42 U.S.C. § 405(g); Myers v. Sullivan, 916 F.2d 659, 676 (11th Cir. 1990).

### E.    SUMMARY OF CLAIMANT'S RELEVANT MEDICAL HISTORY

Plaintiff's medical history includes numerous hospitalizations and emergency room visits related to her stomach problems, and multiple hospitalizations for "possible alcohol induced mood disorder" (R. 260, 413-440); "acute alcohol intoxication (R. 491-514); polysubstance abuse (R. 866-909); alcohol abuse (R. 920-947); alcohol dependency (R. 954-972); alcohol dependence, r/o alcohol induced mood disorder (R. 1012-1043); cocaine abuse (R. 1044-1054); polysubstance dependence (R. 1082-1103); alcohol abuse and depression (R. 1104-1132); alcoholism (R. 1134-1140).

Even treatment at the Gateway Dual Diagnosis Community Services listed her "major presenting problem Alcohol Dependency." (R. 328).  In a later treatment note, it was stated, "Her depression triggers her alcohol use and her alcohol use exacerbates her depression.  (R. 949-950).  Later notes from Gateway Dual Diagnosis included

**No. 1:02CV125-SPM/AK**

opiod dependence (R. 664-671); and mood disorder with alcohol, cocaine and opiod dependence. (R. 710-729).

Several Psychiatric Review Forms have been completed finding nothing more than moderate limitations in a few areas. (R. 369-371) and (913-919). Likewise, with a Mental RFC. (R. 910-912).

Several Physical RFC's were completed assessing her at a light work level with no limitations. (R. 389-398) and (441-448).

F.   **SUMMARY OF THE ADMINISTRATIVE HEARING (held on February 12, 2003)**

Plaintiff appeared at the hearing with her present attorney. (R. 44). Plaintiff was 55 at the time of hearing, had a high school diploma and two years of college, and was currently working at the Huddle House as a waitress. (R. 47). She worked 20 to 25 hours a week, about four days a week. (R. 48). Prior to that she worked at Ryan;s and the Waffle House about the same number of hours. (R. 49). She had managed a McDonalds for a six months period. (R. 51). Physically, her problems are from a gastrectomy in 1988 which causes her to have to eat several small meals a day. (R. 54-55). Her mental problems derive from being abused "terribly" as a child, which causes her to react to triggers such as smells or someone's hand and then she's out of control or she soils her clothes. (R. 55-56). This also caused her to drink to change the way she feels. (R. 56). She reported being alcohol free since the summer because of her counseling and medication, which includes Effexor, Paxil, Remeron, and Seroquel. (R. 57). She currently lived in a home for women with mental illness and substance

**No. 1:02CV125-SPM/AK**

abuse problems, that provided her transportation to counseling and monitored her progress. (R. 58). She had 15 shock treatments, which has caused her some memory loss and she has difficulty trusting people. (R. 59). Plaintiff claims to be stable since July, but she is not able to support herself working at her present job and would not be able to increase her hours to 35 or 40 hours a week because she could not attend her classes. (R. 61). Plaintiff testified that even if she could get to her classes, for example if they were available during the evening, she would be too tired. (R. 62). For entertainment, Plaintiff testified that she goes to the library a lot and reads and watches movies. (R. 64). The ALJ posed the following hypothetical to the vocational expert: an individual capable of performing light work with the restriction that the work not be more than moderately stressful, and that the individual would have occasional lapses of concentration and short term memory. (R. 72). The expert testified that Plaintiff could perform her past relevant work. (R. 73). Plaintiff's attorney added the limitation that she could tolerate only occasional contact with the general public, and the expert eliminated the waitress jobs, but said she could still do receptionist or administrative clerk jobs. (R. 73-74).

**G.    DISCUSSION**

    a)    Credibility Assessment

Plaintiff is correct that the ALJ did not specifically cite in the text of his decision the reasons he found her reports of disability and limitation to be not credible. However, he found that she was not "totally credible for the reasons set forth in the body of the

decision."  As the government notes in its brief, the body of the decision includes a number of factors which are typically considered when assessing a claimant's credibility such as her daily activities (e.g. work), instances of misrepresentation, and failure to comply with medication or other treatment regimens.  As the ALJ pointed out, Plaintiff worked in her former field, had been less than forthright about her drug and alcohol use, and was non-compliant with her medication which was designed to alleviate her depression, which she admitted caused her to drink.  The undersigned does not find it persuasive that Plaintiff could not afford her medication, when obviously she could afford alcohol and cocaine.  Further, as the government argues in its brief, the primary factor resulting in the denial of her disability is that the regulations preclude disability when drugs and alcohol are a contributing factor to her disability and Plaintiff does not adequately address this issue, except to state in reply to the government's brief that "[w]hile unfortunate, Plaintiff's alcohol or other substance use is not material to her disability."  (Doc. 18, p. 3).  Unfortunately, the regulations and the medical evidence of record in this case do not support this statement.  Thus, even though the ALJ may have been less than precise about his findings with regard to her credibility and may not have assessed her disability under the sequential evaluation in as clear an order as he could have, these "errors," if considered such, were harmless because the result would likely have been the same.  See Lubinski v. Sullivan, 952 F.2d 214, 216 (8th Cir. 1991); Diorio v. Heckler, 721 F.2d 726, 728 (11th Cir. 1983) (error by the ALJ will be held harmless if the evidence is strong enough to support the outcome despite the lapse).

**No. 1:02CV125-SPM/AK**

  b)  <u>Drug and Alcohol Abuse</u>

If there is medical evidence of drug addiction or alcoholism, the ALJ must first determine if the person is disabled using the standard five step approach. 20 CFR §404.920. Utilizing this approach, the ALJ determines whether Plaintiff meets the requirements of Listing 12.09 for substance abuse disorders. Then he must determine whether drug and alcohol use is a contributing factor material to disability or whether the person would still be found disabled even if he or she stopped taking drugs or alcohol. 20 CFR §404.1535. In making this determination, the ALJ will evaluate which of his or her physical and mental limitations would remain if that person stopped using drugs or alcohol and then determine whether these remaining limitations would be disabling. 20 CFR §404.1535 (b)(2). Plaintiff carries the burden of proving that drug and alcohol use is not a contributing factor to his disability. <u>Doughty v. Apfel</u>, 245 F.3d 1274, 1279-1280 (11th Cir. 2001).

Listing 12.09 Substance Addiction Disorders: Behavioral changes or physical changes associated with the regular use of substances that affect the central nervous system. The required level of severity for these disorder is met when the requirements in any of the following (A through I) are satisfied.

  A. Organic mental disorders.  Evaluate under 12.02.
  B. Depressive syndrome.  Evaluate under 12.04.
  C. Anxiety disorders.  Evaluate under 12/06.
  D.  Personality disorders.  Evaluate under 12.08.
  E. Peripheral neuropathies.  Evaluate under 11.14.
  F.  Liver damage.  Evaluate under 5.05.
  G.  Gastritis.  Evaluate under 5.04.
  H. Pancreatitis.  Evaluate under 5.08.

**No. 1:02CV125-SPM/AK**

I.  Seizures.  Evaluate under 11.02 or 11.03.

The ALJ evaluated Plaintiff under Listing 12.04 and found that without considering her alcohol and drug abuse, she was not disabled under this section.  He cites to the medical record which shows numerous hospitalizations for drug and alcohol abuse.  Even though she was suffering from depression, as one treatment center noted, she was caught in a vicious cycle where the depression and alcohol abuse exacerbated each other, but her primary diagnosis was alcohol dependency.  Significant to the ALJ's decision was the fact that Plaintiff was currently working at her past relevant work and the only reason she cited for not being able to increase her hours to a full time position was her desire to continue with her treatment "classes."  She did not cite any physical or mental limitations that would preclude her from increasing her work hours by 10 or 15 hours a week.  Likewise, none of the functional capacity assessments found any physical or mental limitations that would preclude her from performing her past relevant work.  Thus, there was substantial evidence to support the ALJ's decision that alcohol and drug abuse were contributing factors to Plaintiff's impairments, and without such factors, she would not be disabled.

Accordingly, it is respectfully **RECOMMENDED**:

That the decision of the Commissioner denying benefits be **AFFIRMED**.

At Gainesville, Florida, this  **16th**  day of November, 2006.

                            **s/ A. KORNBLUM**
                            **ALLAN KORNBLUM**
                            **UNITED STATES MAGISTRATE JUDGE**

**No. 1:02CV125-SPM/AK**

**NOTICE TO THE PARTIES**

A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation.  A party may respond to another party's objections within 10 days after being served with a copy thereof.  Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.

**No. 1:02CV125-SPM/AK**